# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO.: 5:09-CV-00154-TBR

JOHN HENRY LEWIS                                                                                               PETITIONER

v.

JOSEPH MEKO, WARDEN                                                         RESPONDENT

## MEMORANDUM OPINION

This matter is before the Court upon Petitioner, John Henry Lewis', Objection to the magistrate judge's Report and Recommendations (DN 14), Respondent's Objection to the magistrate judge's Report and Recommendations (DN 12), and the petition for habeas corpus filed by Petitioner pursuant to 28 U.S.C. §2254 (DN 1). This matter is now ripe for adjudication. The Court has conducted a *de novo* review of the magistrate judge's report in light of the objections thereto and the record as a whole. The Court has determined the magistrate judge's report should not be adopted. For the following reasons, the petition is DENIED.

## PROCEDURAL HISTORY

The petitioner, John Henry Lewis, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. DN 1. The Court entered an order allowing Respondent 40 days to answer the petition and providing Petitioner 15 days following service of the answer to reply. DN 5. Respondent filed his answer on November 9, 2009. DN 8. Petitioner was served with the answer on November 12, 2009. DN 14-1. Petitioner's reply was due November 29, 2009. This matter was referred to the magistrate judge for a report and recommendations pursuant to 28 U.S.C. § 636. DN 5. The magistrate judge filed his report and recommendations on November 24, 2009. DN 10. Petitioner's reply was mailed November 24, 2009. DN 11-1. Respondent objected to a typographical error in the magistrate judge's report. DN 12. Petitioner has now objected to the

magistrate judge's report on the grounds that the magistrate judge entered his report and recommendations before receiving and without considering Petitioner's reply. DN 14. Petitioner also objects to several of the substantive findings in the magistrate judge's report. DN 14. The Court will conduct a *de novo* review of the magistrate judge's report in light of the objections thereto and the record as a whole.

**BACKGROUND**

On June 23, 2003, Richard Hill was shot and killed in the parking lot of the Cinemark Theatre in Paducah, Kentucky. Lewis, the petitioner, his girlfriend, Nina Sykes, and a friend, Alta McGill, drove from Cairo, Illinois to the Cinemark Theatre in Paducah, Kentucky, to see a movie on June 23, 2003. Richard Hill and his girlfriend, Raven Key, were also attending a movie at the Cinemark Theatre. The Hill and Lewis vehicles were parked next to one another near the front door of the theater. The vehicles were facing opposite directions so that the driver-side doors of each vehicle were in close proximity to one another.

Lewis accused Hill of hitting Lewis' car door as Hill opened his own car door. Hill denied he hit Lewis' car. Lewis was upset and pressed Hill to apologize. Several verbal communications took place between Lewis and Hill. Key testified she heard someone mention "Want to play with guns?", so she fled the vehicle. She stated she heard five or six shots in quick succession, but did not look back until she reached the theater door. Inside the theater she called 911.

Lewis testified he knew Hill was a confrontational person with a violent reputation. Lewis testified he saw Hill reach down toward the passenger seat of his car and saw Hill's shoulder dip. Lewis testified his friend, McGill, said "I think he's (Hill) going for a gun." Lewis testified he thought he saw a pistol in Hill's hand and reached under his dash board for a gun. He looked over

2

his left shoulder, ducked and fired several shots. Lewis then drove away unaware if anyone had been hit by his gunfire.

Lewis later learned Hill had been shot and died. Lewis contacted the authorities and stated he would turn himself in after he hired an attorney. Lewis was arrested in Chicago, Illinois, and gave a statement to Chicago Police that he had shot Hill in self-defense. Lewis was indicted by a Kentucky grand jury on September 5, 2003, and charged with murder, possession of a firearm by a convicted felon, and being a persistent felon in the second degree. Lewis was tried in January of 2005. Lewis' sole defense was self-defense.

Key testified Hill had no gun in his possession and she did not see Hill reach for anything. Sykes testified she heard the argument between Lewis and Hill and she ducked in the vehicle as the shots were fired. Two police officers also testified that no weapon was found at the scene.

The jury was given a broad range of instructions including the self-defense instructions, the mistaken belief in the need for self-defense instructions, and instructions concerning initial aggressor and provocation. The jury was also given an instruction on wanton murder as well as intentional murder. The jury found Lewis guilty of wanton murder and possession of a handgun by a convicted felon. Lewis was sentenced to a total of 60 years.

**STANDARD**

The purpose of the writ of habeas corpus is "to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

3

1214 (April 24, 1996) ("AEDPA") amended the habeas statute, 28 U.S.C. § 2254, and applies to all habeas cases filed after April 25, 1996. The petition in this case was filed after this date, therefore, the amendments to 28 U.S.C. § 2254 are applicable to this petition. *See Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004).

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-404 (2000)). The habeas statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Furthermore,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Following the modifications set forth by the AEDPA, the Sixth Circuit explained, a state court decision may only be overturned if:

4

> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' or; 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001) (internal citations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 406-409; 412-13 (2000).

In performing analysis of a state court decision pursuant to 28 U.S.C. §2554(d), the first requirement is that state courts be tested only against "clearly established Federal law, as determined by the Supreme Court of the United States." In order to be clearly established law, the law relied on by the petitioner must be law that was clearly established at the time the state court decision became final, not afterward. *Williams*, 529 U.S. at 380. The federal court is also limited to law "as determined by the Supreme Court" only. *Id.* at 381-82. However,

> Although only Supreme Court case law is relevant under the AEDPA in examining what Federal law is "clearly established," the decisions of the United States Courts of Appeals may be informative to the extent [the court has] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.

*Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

Second, the Court must determine whether the state court decision was "contrary to, or involved an unreasonable application of" clearly established law. *Id.* at 384. In order to find a state court's application of Supreme Court precedent unreasonable under 28 U.S.C. § 2554, the state court's decision must have been objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams*, 529 U.S. at 409 (explaining, "[s]tated simply, a federal habeas court making the

5

"unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). An unreasonable application of federal law is distinct and different from an incorrect application of federal law. *Id.* at 410; *see also Macias v. Makowski*, 291 F.3d 447, 545 (6th Cir. 2002) (holding "the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law"). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Factual determinations by State courts will not be overturned unless objectively unreasonable. 28 U.S.C. § 2254(d)(2). The applicant, or petitioner, bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (holding "[u]nder AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence" (internal quotation marks omitted)). The findings of state appellate courts are also accorded the presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 546 (1981) (holding "[s]ection 2254(d) . . . makes no distinction between the factual determinations of a state trial court and those of a state appellate court").

## DISCUSSION

### I. Exhaustion

A threshold requirement for habeas petitioners is the exhaustion of the remedies available

6

in the State court. 28 U.S.C. § 2254(b)(1)(A). On direct appeal to the Kentucky Supreme Court, Petitioner argued the trial court committed reversible error in refusing to allow Petitioner to present evidence of specific acts of violence on the part of the victim in support of Petitioner's theory of self-defense. DN 8-6. This issue is not before this Court on habeas review. Petitioner, in his Ky. RCr. 11.42 motion to vacate, asserted constructive amendment of the indictment, ineffective assistance of trial counsel and prosecutorial misconduct which are all before the Court on habeas review. DN 8-7. Petitioner's Ky. RCr. 11.42 motion was denied by the trial court. DN 8-7 at 1. Petitioner appealed the denial to the Kentucky Court of Appeals which affirmed the decision of the trial court. DN 8-7 at 9. Petitioner did not appeal the decision of the Kentucky Court of Appeals.

> The Supreme Court, in *O'Sullivan v. Boerckel,* explained,
>
> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

526 U.S. 838, 845 (1999). However, Kentucky Rule of Criminal Procedure 12.05 provides

> In all appeals from criminal convictions or post-conviction relief matters a litigant shall not be required to petition for rehearing or to file a motion for discretionary review to either the Kentucky Court of Appeals or Kentucky Supreme Court following an adverse decision of either the circuit court or Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

Therefore, under Kentucky law, Petitioner is deemed to have exhausted his state remedies as to grounds one, two and four which were raised in the Ky. RCr.11.42 motion to vacate which was appealed.

7

Ground three of the petition is ineffective assistance of appellate counsel. Petitioner never raised this claim at the state court level; however, relief may still be granted if "there is an absence of available State corrective process." 28 U.S.C. 2254 (b)(1)(B)(I).[1] In Kentucky, ineffective assistance of counsel is not a cognizable claim. *Lewis v. Com.*, 42 S.W.3d 605, 614 (Ky. 2001). Additionally, the Sixth Circuit has held that a prisoner in Kentucky may raise a claim of ineffective assistance of appellate counsel for the first time in a habeas petition. *Boykin v. Webb*, 541 F.3d 638, 647-48 (6th Cir. 2008). The Court finds Petitioner's failure to raise this issue before the state court is not fatal.

**II. Ground One, Constructive Amendment of Indictment, and Ground Three, Ineffective Assistance of Appellate Counsel**

As to ground one, Petitioner states in his Petition

Intentional and wanton murder are two separate but equal charges in the State of Kentucky. The language used in my indictment has been seen as language for intentional murder by the Kentucky Supreme Court. The Fifth Amendment to the U.S. Constitution states that any infamous crime to be charged and tried must be done so under indictment by a grand jury. My charge was amended at trial by a judge and a prosecutor, clearly violating my Fifth Amendment right as well as my Fourteenth Amendment due process right of notice of charge to be tried.

DN 1 at 5.

Respondent first argues Petitioner has procedurally defaulted because the issue was not raised on direct appeal. DN 8 at 11. Respondent further asserts that Petitioner fails to satisfy the

---

[1] Kentucky Rule of Criminal Procedure 12.05 also provides: "If rehearing or discretionary review is sought on less than all of the claims of error presented on appeal, the litigant, nevertheless, shall be deemed to have exhausted all available state remedies respecting the claim(s) of error for which rehearing or discretionary review is not sought." Thus, because Petitioner appealed some of his claims, he is also deemed to have exhausted any claims that were not raised at the state court level, e.g., ineffective assistance of appellate counsel.

standard for ineffective assistance of counsel claims as Petitioner can not establish the second prong of the *Strickland* test: prejudice. DN 8 at 12. Respondent also asserts the Fifth Amendment of a grand jury indictment is not applicable to the states and Petitioner's claim does not meet the standard for a due process violation. DN 8 at 12-13.

### a. Procedural Default

First, neither party disputes that Petitioner's claim of constructive amendment of the indictment should have been raised on direct appeal.[2] Petitioner, however, argues this failure resulting in procedural default is excused by the ineffective assistance of his appellate counsel. DN 11 at 12.

The Supreme Court explained,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Petitioner asserts that ineffective assistance of appellate counsel was cause for the default and that actual prejudice resulted.

In *Coleman,* the Supreme Court discussed at length the standard set forth in *Murray v. Carrier,* which addressed attorney error as cause for procedural default. *Id.* at 753-57. The *Carrier* Court held "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default." 477

---

[2] Petitioner states "The Respondent is correct that the constructive amendment of Petitioner's indictment should have been raised on direct appeal." DN 11 at 11.

U.S. 478, 488 ( 1986) (internal citations omitted). The Supreme Court held cause must be an objective factor external to defense counsel's efforts comply with the State procedural rule. *Coleman*, 501 U.S. at 753. Therefore, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54. This is because "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . ." *Id.* at 754 (quoting *Carrier*, 477 U.S. at 488).

The Supreme Court, in *Strickland v. Washington,* set forth a two prong test for ineffective assistance of counsel. 466 U.S. 668, 687(1984). The Court stated,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* The defendant, or petitioner in this case, must make both showings in order to prevail. *Id.* Because the test is conjunctive, a reviewing court need not address the performance prong if it is easier to dispose of the prejudice prong. *Id.* at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir., 2004). To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where "one is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different," there has been no showing of prejudice. *Baze*, 371 F.3d at 322.

The Court must determine if Petitioner's appellate counsel was constitutionally ineffective

so that the procedural default as to ground one is excused. This is the same analysis which is required for the determination of ground three, ineffective assistance of appellate counsel. In discussing ground one Petitioner "primarily focuses on prejudice arising from trial counsel's failure to object to the constructive amendment and address (sic) the prejudice of appellate counsel in a later topic." DN 11 at 15. When discussing ground three, ineffective assistance of appellate counsel, Petitioner spends a substantial amount of time discussing the performance prong and only states "the substantial prejudice to Lewis during appellate review of the omitted issue" out weighs any deference to the trial court. DN 11 at 39. Petitioner states "the prejudice arising from the trial court's constructive amendment of the charge resulted in manifest injustice to Lewis"; however, neither of these statements allege prejudice as the result of ineffective assistance of appellate counsel. DN 11 at 39. The Court is unable to find even a conclusory allegation of prejudice resulting from ineffective assistance of appellate counsel in Petitioner's petition or reply.

The Court concludes that Petitioner has failed to show that, even if appellate counsel had raised the issue of constructive amendment of the indictment, there is a non-speculative basis for concluding that the result of the appeal would have been different. As a result, the procedural default as to ground one is not excused making dismissal of ground one proper. Additionally, Petitioner has failed to establish prejudice as required to maintain a claim for ineffective assistance of appellate counsel making dismissal of ground three proper.

**III. Ground Two Ineffective Assistance of Trial Counsel**

Petitioner alleges in his Petition that his trial counsel was ineffective because he 1) allowed the original indictment to be amended at trial; 2) failed to investigate and prepare for the trial properly; 3) failed to file a pre-trial motion; 4) failed to properly impeach a key witness; and 5)

11

allowed an erroneous jury instruction to be submitted to the jury. DN 1at 6-7. Respondent asserts the Kentucky Court of Appeals rejection of Petitioner's claims of ineffective assistance of trial counsel was a reasonable application of *Strickland*. DN 8 at 13.

As previously stated, clearly established federal law requires a petitioner satisfy the two prong test in *Strickland* in order to state a claim for ineffective assistance of counsel. 466 U.S. at 687. The Court may consider just one part of the test, usually prejudice, since the test is conjunctive. *Id.* at 697. Although the analysis of counsel's competency varies depending upon the particular claim, as to all of the petitioner's claims the prejudice inquiry is essentially the same. The Court will consider each of Petitioner's claims in turn.

Petitioner's first claim pertains to counsel's failure to object to a constructive amendment to the indictment in light of the evidence presented by the Commonwealth at trial. The Kentucky Court of Appeals held as follows:

> Although Lewis maintains that the prosecution planned to present a case that involved intent, no mental state was specified by the indictment. Nonetheless, an indictment may be amended at any time before a verdict is rendered to conform with the proof, if no additional offense is charged and if the substantial rights of the defendant are not prejudiced. *Wolbrecht v. Commonwealth*, 955 S.W.2d 533, 537 (Ky.1997); RCr 6.16. Lewis argues that the amendment from intentional murder to wanton murder was prejudicial because it infringed upon his right to formulate a defense. We disagree.
>
> Intentional murder and wanton murder are the same offense under Kentucky law and it was proper to instruct the jury on both alternate theories of liability. *Evans v. Commonwealth*, 45 S.W.3d 445, 447 n. 5 (Ky.2001); KRS 507.020. Any amendment or change in prosecutorial plan "merely altered the designation of the subsection of the statute under which [Lewis was] charged. The offense was the same. No additional evidence was required to prove the amended offense...." *Schambon v. Commonwealth*, 821 S.W.2d 804, 810 (Ky.1991).
>
> Further, Lewis failed to articulate how he was prejudiced by this change. Although he claims that it damaged his ability to formulate a defense, Lewis failed to show how the result would have been different if the "amendment" had not occurred. After

12

> all, Lewis admits firing the fatal shot but claims that he did so in self-defense. The trial court's instructions made the self-protection defense available to both intentional and wanton murder. The jury simply did not go along with self-defense as
> justification for Lewis' killing of Richard Hill.

The Court concludes that the state court's determination of the claim was not "contrary to," nor did it involve an "unreasonable application of" United States Supreme Court precedents as required by 28 U.S.C. § 2254(d).

Petitioner's remaining claims assert that trial counsel was ineffective for failing to 1) investigate and prepare for trial properly, 2) file a pre-trial motion, 3) properly impeach key witnesses, and 4) object to an erroneous jury instruction. The Kentucky Court of Appeals held as follows:

> [1] Lewis also claims that his trial counsel's performance was deficient because he failed to review and investigate a "Crime stopper" audio tape that was placed in discovery and failed to request a continuance based upon the evidence. Lewis maintains that the tape reveals a call-in tip that Raven Key, Hill's girlfriend, removed the gun before the police arrived.
>
> As a matter of law, Lewis was entitled to competent representation, including reasonable investigation of all potential defenses. *Strickland v. Washington*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Unless Lewis shows that his defense counsel made errors so serious that his performance fell outside the wide range of professionally competent assistance, it will be deemed competent. *Id.* at 678. We do not find such egregious errors in this case.
>
> While a prudent attorney may have reviewed the tape, we cannot say that the tape had a direct impact on the case. Lewis was not charged with tampering with evidence. Lewis does not dispute that he shot Hill. Lewis' arguments are even more curious considering the defense's theory of the case included Ms. Key hiding the weapon. Therefore, we decline to find that counsel's failure to review the tape constituted ineffective assistance of counsel.
>
> ...

13

[2] Lewis claims that he was prejudiced by his trial counsel's failure to make a motion to suppress the statement he made to Illinois police without counsel. Lewis does not allege that his statement was coerced or that he was denied counsel. He merely claims that the statement should be suppressed because it was taken under the advice of counsel but without counsel present.

Lewis does not claim that he requested an attorney during the interview. He failed to sufficiently articulate his claim. Based upon the record and Lewis' argument, we see no deficiency in trial counsel's decision not to file a suppression motion.

...

[3] Lewis claims that Ms. Key initially made a written statement in which she claimed that she heard the phrase, "Do you want to play with guns?" On direct examination, the phrase changed to "So, you want to play with guns?" Lewis claims that this trial counsel's performance was deficient because he failed to impeach her on this inconsistency. Despite their semantic difference the two phrases are substantially the same. It is understandable that, as a tactical decision, defense counsel would not want to seem unduly critical of the witness.

...

[4] Lewis claims that his attorney should have contested the indictment by challenging grand juror impaneling procedures. Lewis argues that the grand jurors do not represent a cross-section of the community. He also alleges that jury administrators improperly dismiss or disqualify jurors in McCracken County rather than judges. We find these claims to be without merit as Lewis provides no evidentiary basis for his accusations.

Lewis claims that his counsel rendered ineffective assistance when he failed to thoroughly question the venire concerning any connection to the victim. Lewis argues that he was prejudiced by a juror who, on the second day of trial, realized that he knew Hill's family and brought the matter to the trial judge's attention. We disagree.

The Court concludes that the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Therefore, ground two of the petition is dismissed.

### IV. Ground Four Prosecutorial Misconduct

Petitioner alleges "the Commonwealth's prosecutor withheld possible exculpatory evidence

in the form of a crime-stoppers tape until the day before the trial started. The prosecution also made statements in his (sic) closing arguments that was (sic) not supported by the evidence presented at trial as well as comments intended to inflame and prejudice the jury in it's (sic) favor." DN 1 at 10. Respondent asserts that the rejection of Petitioner's claims by the Kentucky Court of Appeals was a reasonable application of clearly established federal law.

While not characterized as such in the Petition, Petitioner raised this ground as a basis for ineffective assistance of counsel at the state court level and referred to it as such several times in his reply. DN 11 at 41. If characterized as a claim for ineffective assistance of counsel the Court must determine whether the Kentucky Court of Appeals unreasonably applied the standard set forth in *Strickland*. The Kentucky Court of Appeals stated,

> Lewis also claims that his trial counsel was deficient when he failed to object during the prosecutor's closing argument. In closing argument, the prosecutor gratuitously explained to the jury how a gun fires, despite a dearth of evidence on the point. Lewis argues that he was prejudiced by his trial counsel's failure to preserve the issue for appeal by an objection. We find any resulting prejudice to be minimal. Lewis admitted that he shot Hill and claimed that he did so for self-protection. A demonstration of the weapon would not negate his defense.
>
> Likewise, we find that no prejudice stemmed from the prosecutor's statements describing Lewis as a "thug". Counsel for both the Commonwealth and the defense have wide latitude in closing arguments. *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky.2006). An attorney may comment on tactics, the evidence, and the falsity of the defense. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky.1987). A "thug" is defined as "a brutal ruffian or assassin: GANGSTER, TOUGH[.]" Merriam-Webster's Collegiate Dictionary 1304 (11th ed.2005). The prosecutor's comment was not improper in light of the evidence that indicated that Lewis murdered Hill. To paraphrase Forrest Gump, "thuggery is as thuggery does."

The Court cannot conclude that the state court's determination of the claim was in contravention of United States Supreme Court precedents as contemplated by 28 U.S.C. § 2254(d).

If this claim were brought before the Court distinct from the ineffective assistance of counsel

15

claim, the Court must still determine if the Kentucky Court of Appeals' determination of the issue was contrary to clearly established federal law.

### a. Exculpatory Evidence

Petitioner asserts a "crime-stopper" tape where a caller reported the Raven Key, Hill's girlfriend, had removed Hill's gun from the crime scene before the police arrived was not timely disclosed by the prosecution. DN 11 at 41. Petitioner argues that the content of the tape would support his self-defense theory and work to impeach Key's testimony. DN 11 at 42. Petitioner reasons, "[h]ad [Petitioner] been able to cast doubt on Ms. Key while corroborating his defense about Hill's possession of a gun, there is little doubt that the jury would have had even more reason to doubt Ms. Key's credibility." DN 11 at 42-43.

The Supreme Court has held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotations and citation omitted). In sum, there are three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

The Kentucky Court of Appeals stated ". . . we cannot say that the tape had a direct impact on the case. Lewis was not charged with tampering with evidence. Lewis does not dispute that he shot Hill. . . ." The Court finds the determination of the state court was not contrary to clearly

16

established federal law as required in order for a writ of habeas to issue. Petitioner has not sufficiently alleged a *Brady* violation: Petitioner has not shown that prejudice resulted from the arguably impeaching evidence being withheld.

### b. Comments during Closing

Petitioner asserts during closing arguments the prosecutor made improper comments. Petitioner states that the prosecutor referred to him as a "thug from Cairo Illinois. Who came to our town, to our movie theater and killed one of our citizens." DN 11 at 43. Petitioner also stated that the prosecutor "testified about how a gun operates and fires" when there had been no evidence presented during the trial regarding how a gun operates or fires. DN 11 at 43.

The Supreme Court has held that question before the court in the instance of alleged prosecutorial misconduct is whether the improper comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (internal quotations and citation omitted). "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) (citing *Donnelly*, 416 U.S. at 645). A reviewing court must also look at the case as a whole in order to determine if the conduct so infected the trial. *See Donnelly*, 416 U.S. at 645 (comparing prosecutor's remarks to a single jury instruction which may not be judged in artificial isolation).

The Kentucky Court of Appeals stated:

> Lewis also claims that his trial counsel was deficient when he failed to object during the prosecutor's closing argument. In closing argument, the prosecutor gratuitously explained to the jury how a gun fires, despite a dearth of evidence on the point. Lewis argues that he was prejudiced by his trial counsel's failure to preserve the issue for appeal by an objection. We find any resulting prejudice to be minimal. Lewis admitted that he shot Hill and claimed that he did so for self-protection. A demonstration of the weapon would not negate his defense.
>
> Likewise, we find that no prejudice stemmed from the prosecutor's statements describing Lewis as a "thug". Counsel for both the Commonwealth and the defense have wide latitude in closing arguments. *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky.2006). An attorney may comment on tactics, the evidence, and the falsity of the defense. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky.1987). A "thug" is defined as "a brutal ruffian or assassin: GANGSTER, TOUGH[.]" Merriam-Webster's Collegiate Dictionary 1304 (11th ed.2005). The prosecutor's comment was not improper in light of the evidence that indicated that Lewis murdered Hill. To paraphrase Forrest Gump, "thuggery is as thuggery does."

The Court finds the Kentucky Court of Appeals determination was not contrary to clearly established federal law. There is no evidence to suggest the trial was "so infected . . . with unfairness as to make the resulting conviction a denial of due process." Ground four of the petition is properly dismissed.

## CONCLUSION

After *de novo* review, the Court has determined the magistrate judge's report should not be adopted. For the foregoing reasons, the Court holds Petitioner's Petition for Writ of Habeas Corpus is DENIED. An appropriate order shall issue.